**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ALEJANDRO RAMIREZ QUEMA,

                  Petitioner,

     vs.

JOHN MATTOS, *et al.*,[1]

                  Respondents.

Case No.: 2:26-cv-000409-GMN-NJK

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

      Pending before the Court is Petitioner Alejandro Ramirez Quema's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 16).  Federal Respondents Michael Bernacke, Kristi Noem, and Pamela Bondi, filed a Response, (ECF No. 20).[2] Petitioner did not reply and the time to do so has passed.  For the reasons discussed below, the Court GRANTS the Petition.[3]

**I.    BACKGROUND**

      Petitioner is a citizen of Guatemala. (I-213 at 2, Ex. 1 to First Fed. Resp., ECF No. 9-2). Petitioner entered the United States without inspection in April 2006 and has lived in the country since. (*Id.* at 3); (Am. Pet. 9:17, ECF No. 16).  Petitioner is married to a United States citizen and has two United States citizen children. (Am. Pet. 10:5–6).  He has lived and worked in the Utah County, Utah area for many years and has already begun the process of rectifying

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin is substituted for the currently named Kristi Noem, and Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi.

[2] Respondent John Mattos filed a separate Response, (ECF No. 19), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

[3] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel must file a post-judgment application that complies with the requirements of 28 U.S.C. § 2412(d)(1)(B).

his immigration status via a family-based I-130 petition,[4] which was approved on July 21, 2021. (*Id.* 10:6–8).

On February 1, 2026, Petitioner was arrested during a traffic stop in Murray, Utah under suspicion of driving under the influence of alcohol. (*Id.* 9:19–20).  After being released, Petitioner was transferred to the Nevada Southern Detention Center, where he has been detained by ICE since February 1, 2026. (*Id.* 9:20–22, 4:20–21).  DHS placed Petitioner in removal proceedings before the Las Vegas Immigration Court pursuant to 8 U.S.C. § 1229a. (*Id.* 10:1–2).  ICE charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. (*Id.* 10:2–4).  Petitioner remains in detention without an opportunity for a bond hearing.

With this Amended Petition, Petitioner seeks release, or in the alternative, a bond hearing under 8 U.S.C. § 1226(a).  Petitioner also seeks attorney's fees and costs pursuant to § 2412 of the Equal Access for Justice Act ("EAJA").

## II.    **LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  A district court's habeas jurisdiction

---

[4] Adjustment of status, and filing an I-130 application, is a multi-step process that allows a relative of a noncitizen present in the United States to request a change in the noncitizen's status; if the I-130 application is granted, there are additional steps the non-citizen must take to change their immigration status from non-immigrant to lawful permanent resident. *See Ayanian v. Garland*, 64 F.4th 1074, 1081-83 (9th Cir. 2023).

includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.   **DISCUSSION**

Petitioner argues that he is entitled to habeas relief on two grounds: (1) his detention without a bond hearing violates the Immigration and Nationality Act ("INA"); and (2) his detention without a bond hearing violates his right to due process under the Fifth Amendment of the United States Constitution. (*See generally* Am. Pet.).  Federal Respondents argue that Petitioner's Amended Petition is not ripe because Petitioner did not exhaust his administrative remedies first before seeking relief in this Court. (Fed. Resp. 2:15–24, ECF No. 20).  They also oppose the substance of Petitioner's claims. (*See generally id.*).

First, the Court is unpersuaded by Federal Respondents' "ripeness" argument for the same reasons explained in *Quintana Cartaya v. Bernacke*, Case No. 2:26-cv-00438-GMN-MDC, 2026 WL 1229965, at *3–4 (D. Nev. May 5, 2026).  Turning to the substance of Petitioner's claims, Federal Respondents appear to assert that Petitioner is a member of the certified class in *Jacobo Ramirez v. Mullin, et al.*, No. 25-cv-02136-RFB-MDC (D. Nev.), because they reassert the same arguments made in that case. (*See* Fed. Resp. 3:2–13); *Jacobo Ramirez v. Mullin, et al.*, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026).  Accordingly, the Court need only confirm that Petitioner is a member of the *Jacobo Ramirez* class, determine whether Respondents violated Petitioner's due process rights, and order any appropriate relief.

#### A.  Class Membership

The Court finds that Petitioner is a member of the *Jacobo Ramirez* class.  This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

*Jacobo Ramirez v. Mullin*, *et al.*, No. 2:25-CV-02136-RFB-MDC, at *4 (citation omitted). Based on the parties' undisputed factual allegations, and the evidence they supply, the Court finds that Petitioner satisfies these criteria. *See Carlson v. Landon*, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. (Am. Pet. 2:1–3). Second, he is in removal proceedings before the Las Vegas Immigration Court, which sits in the United States District of Nevada. (*Id.* 10:1–4). Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. (I-213 at 3, Ex. 1 to First Fed. Resp.). Fourth, Petitioner is being detained pursuant to 8 U.S.C. § 1225(b), not 8 U.S.C. §§ 1226(c), 1225(b)(1), nor 1231. (Am Pet. 11:15–16). Fifth, Petitioner was arrested within the United States' interior long after he entered the country. (I-213 at 3, Ex. 1 to First Fed. Resp.).

In sum, Petitioner is a *Jacobo-Ramirez* Class Member, and he is entitled to the relief afforded to the class. *Cf. Navarro v. Mukasey*, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief."). Therefore, the Court finds Petitioner's ongoing detention is unlawful under the INA, because his detention is governed by § 1226(a) and its implementing regulations, and Respondents are improperly subjecting him to mandatory detention under § 1225(b)(2)(A) in violation of the declaratory judgment and vacatur entered in *Jacobo-Ramirez*. *See Jacobo-Ramirez*, 2026 WL 879799, at *33–34.

**B. Due Process**

The Court also finds that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). But the "recognized liberty interests of U.S. citizens and [noncitizens] are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 522).

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[5] Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous

---

[5] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207. However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)). The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Accordingly, the Court will apply the *Mathews* test here.

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi*, 542 U.S. at 529; *see also Rodriguez Diaz*, 53 F.4th at 1207 ("[A]n individual's private interest in freedom from prolonged detention is unquestionably substantial."). "That interest is especially weighty considering the process he has received, and that was available to him, throughout his months of detention—that is, regarding the government's custody determinations, no process at all." *Melendez Paz v. Mullin*, No. 2:26-CV-00296-RFB-MDC, 2026 WL 1194944, at *5 (D. Nev. May 1, 2026) (citing *Rodriguez Diaz*, 53 F.4th at 1208) (considering the process the immigration detainee had already received during his detention pursuant to § 1226(a) and further process that was available to him in weighing his private liberty interest).

Second, the risk of erroneous deprivation of Petitioner's liberty is also high, especially given Petitioner has not received any hearing, either pre- or post-detention. The government's current procedures "do not require any individualized determination that Petitioner's detention is justified. Nor is Petitioner provided with a timely opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact . . . ." *Melendez Paz*, 2026 WL 1194944, at *5. The record here shows that the agency issued an arrest warrant and a Notice to Appear. (Arrest Warrant at 2, Ex. 1 to Fed. Resp., ECF No. 20-1); (I-213 at 4, Ex. 1 to First Fed. Resp.). However, there is no evidence in the record to support a finding that ICE provided Petitioner with an initial custody determination hearing prior to detaining him. Petitioner has also not been given a bond hearing while in detention. Accordingly, the Court finds that current agency procedures do not sufficiently protect

Petitioner's liberty interest nor mitigate the risk of erroneous deprivation. The additional procedures that should be afforded under § 1226(a) would greatly reduce the risk of erroneous deprivation.

Third, the final factor of the *Mathews* test considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. But Respondents have not explained how detaining Petitioner without due process serves these interests. In fact, limiting detention to noncitizens who are shown to be dangerous or a flight risk may serve the government's and the public's interest by limiting "the fiscal and administrative burdens attendant to immigration detention." *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025); *see also Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that in 2017 "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").On balance, the *Mathews* factors weigh in favor of Petitioner, and the Court therefore finds that he is entitled to a pre-deprivation hearing, before any arrest, under *Mathews*.

**C. Remedy**

Based on the record before it, the Court finds that Petitioner has been subjected to arbitrary, erroneous, and prolonged detention in violation of his statutory and constitutional rights, as well as the *Jacobo-Ramirez* declaratory judgment and vacatur. The Court now turns to determine the appropriate remedy for this matter. *See Sanders v. Ratelle*, 21 F.3d 1446, 1461

(9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus . . . . The court is free . . . to fashion the remedy as law and justice require . . . .") (citations and quotation marks omitted).  In doing so, the Court finds that immediate release is the appropriate equitable remedy in this case for the following reason.

While ordering a prompt bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, here the Court declines to keep Petitioner detained as it would not adequately remedy the statutory and constitutional injury he has suffered.  The Court finds that ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through post-hoc justifications" and would fail to adequately remedy the harms suffered by Petitioner. *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); *see also, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention.").  The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  Moreover, when presented with the same question before the Court now under a set of similar facts, the *Garcia Larios* court also found that the appropriate remedy was to release the petitioner, rather than order a bond hearing. *Garcia Larios v. Bondi., et al.*, No. 2:26-CV-00629-TLF, 2026 WL 1078210 (W.D. Wash. Apr. 21, 2026) (ordering an I-130

petitioner released where his immigration proceedings were ongoing and he was not afforded proper pre-deprivation procedures before being detained).

Additionally, the Court finds that it must adopt equitable remedies to ensure that Respondents provide due process to Petitioner in the future, in the event of Petitioner's re-detention pursuant to § 1226(a). *Cf. Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997), *as amended on reh'g* (Aug. 4, 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings).  Here, the Court finds it appropriate to order that in the event of Petitioner's re-detention under 8 U.S.C. § 1226(a), Respondents must provide Petitioner a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate under § 1226(a) and its implementing regulations. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court's compliance with a district court's order that the government provide an immigration detainee a bond hearing "under the Due Process Clause," which required "the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Amended Petition for Habeas Corpus Relief under 28 U.S.C. § 2241, (ECF No. 16), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention on his own recognizance by **May 14 2026, at 4:00 p.m.**

**IT IS FURTHER ORDERED** that Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring,

without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as another court in this District has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here. *See generally Herrera v. Knight*, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under § 1226(a) after a constitutionally adequate bond hearing.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the parties shall file a joint status report by **May 15, 2026**, to certify compliance with the Court's order.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket as well as the case caption to reflect these substitutions.

///

///

///

///

///

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.  The Clerk of Court is kindly directed to send a copy of this Order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

**DATED** this ___13___ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court